IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

| | |
|---|---|
| LAURA GRANADO, ) | |
| ) | |
|        **Plaintiff,** ) | |
| ) | Case No.: |
| v. ) | |
| ) | |
| MICHELIN NORTH AMERICA, INC., ) | |
| d/b/a CAMSO ) | REQUEST FOR JURY TRIAL |
|        **Defendant.** ) | |

Serve Resident Agent:
The Corporation Company, Inc.
112 SW 7th Street, Suite 3C
Topeka, KS 66603

## COMPLAINT

COMES NOW Plaintiff, Laura Granado, and for her cause of action against the above-named Defendants, alleges and states as follows:

1. Plaintiff is, and at all times set forth below was, a resident of the State of Kansas.

2. Defendant is a corporation, organized under the laws of New York, with its principal place of business in Greenville, South Carolina.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the amount in controversy exceeds the sum of $75,000 and the parties to this action are citizens of different states.

4. Plaintiff worked for Defendant (and its predecessor) at Defendant's facility in Emporia, Kansas.

5. Plaintiff was discharge at the facility in Emporia, Kansas.

1

6.	Venue is proper pursuant to 28 U.S.C.1391(b) because the events giving rise to the allegations in this complaint occurred in this district.

## **WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY UNDER KANSAS COMMON LAW**

7.	Plaintiff began working at the facility in Emporia, Kansas on or about May 8, 2018.

8.	Plaintiff initially worked as a Polyethelyne Operator, manufacturing wheels.

9.	At that time, the facility was owned and operated by Camso Manufacturing USA LTD ("Camso").

10.	The technical aspects of Plaintiff's position included hoisting wheel products to be placed in and taken from industrial ovens; trimming the products by hand with a box knife; and moving the product in large carts to other areas.

11.	Plaintiff's work environment exposed her and her coworkers to extreme heat, heavy lifting, dangerous chemicals, and loud noise.

12.	To ensure the work environment was a safe as possible, employees could complete safety sheets regarding dangerous conditions or workplace accidents.

13.	Throughout her time with both Camso and Defendant, Plaintiff regularly filled out safety sheets when she encountered violations of safety protocols or other applicable circumstances.

14.	After approximately 14 weeks, Plaintiff began suffering from pain in her arms, shoulders, and back from lifting the heavy wheels.

15.	Plaintiff reported her symptoms to Camso's health and safety representative Gary Braummer.

16. Plaintiff is less than 5 feet tall, which made many of the lifts required in her position chest-level and above lifts; such lifts would be waist to chest level lifts for taller individuals.

17. After reviewing the ergonomics of Plaintiff working in the position, Braummer remarked that Plaintiff working in the Polyethylene Operator position was "an accident waiting to happen."

18. As a result, it was recommended that Plaintiff be moved to a different position because of these ergonomic concerns.

19. Plaintiff was moved to an injection position, which allowed her to complete lifting duties primarily at her waist to chest level.

20. In November 2019, Defendant completed its purchase of Camso and began taking over the facility.

21. Plaintiff was hired to work for Defendant, performing the same job she had previously.

22. In December 2019, Defendant began instructing Plaintiff to cover open shifts in her former Polyethylene Operator position.

23. Plaintiff protested that it had been deemed unsafe for her to work in that position previously.

24. Despite these protests, Defendant continued to place Plaintiff in the Polyethylene Operator position with increasing frequency over the next several months.

25. In December 2019, Plaintiff completed a safety sheet in regards to a dangerous condition at the facility.

26. Kristine l/n/u, one of Plaintiff's coworkers, remarked that Plaintiff filled

3

out "too many" safety sheets.

27. Kristine remarked that Plaintiff was just "afraid of your job."

28. Kristine warned Plaintiff that she should not let Defendant "find out you're afraid."

29. Plaintiff ignored Kristine's comments.

30. In Mid-January 2020, Plaintiff was assigned to work in the Polyethylene Operator position on a semi-permanent basis while Defendant hired new employees for that position.

31. Plaintiff would ultimately work in that position for the rest of her employment with Defendant.

32. On February 20, 2020, Plaintiff was again working in the Polyethylene Operator position.

33. Plaintiff was working with Kristine.

34. Kristine had begun her shift several hours prior to Plaintiff arriving.

35. The two were placing large wheels into an industrial oven to cure.

36. While Kristine was working alone, the oven had to be stopped and maintenance performed.

37. As part of this maintenance, a large metal slide plate had to be removed from inside the oven.

38. The slide plate was leaned against the exterior of the oven while the maintenance employees worked on the oven.

39. After completing the maintenance, the maintenance employees failed to place the slide plate back inside the oven.

4

40. Kristine failed to adequately inspect the machine before restarting it after the maintenance.

41. Had an adequate inspection been done, the missing slide plate would have been noticed.

42. When Plaintiff arrived on shift, the oven was already in use with several wheels placed inside for curing.

43. Unbeknownst to Plaintiff, the slide plate was not installed.

44. Plaintiff spoke with Kristine and learned that more wheels were ready to be placed in the oven.

45. Plaintiff opened the 4'8" oven door to place these wheels into the oven.

46. As Plaintiff placed the 90-pound wheel into the upper shelf, the wheel pushed back because the slide plate was not installed.

47. Plaintiff reacted quickly, stopping the wheel with her arms and chest, and forcing the wheel back into the oven.

48. As a result of this, Plaintiff experienced pain in her arm, shoulder, and back.

49. Plaintiff and Kristine discussed the occurrence.

50. Plaintiff told Kristine that the two of them should inspect the oven to see why the wheel was pushed out.

51. Kristine found the slide plate sitting next to the oven and pointed it out to Plaintiff.

52. Kristine said maintenance had been there earlier and must have forgotten to replace the slide plate.

53. Without the slide plate, the oven could not disperse wheels correctly and wheels could be pushed back out of the oven door.

54. Plaintiff found Jeremy l/n/u, a newer health and safety representative of Defendant, and asked for a safety sheet to record the incident.

55. Jeremy asked Plaintiff why she needed a safety sheet, and Plaintiff explained what had occurred.

56. Jeremy instructed Plaintiff not to complete the safety sheet unless Chris Little, Plaintiff's supervisor, stood next to Plaintiff to make sure she completed the sheet "properly."

57. Plaintiff had never been required to have a supervisor observe or assist her filling out a safety sheet.

58. Little came over observed Plaintiff as she filled out a safety sheet describing the incident.

59. Plaintiff noted in her description of the incident that the cause of the incident was the missing slide plate in the oven.

60. After filling out the safety sheet, Plaintiff requested to see a doctor for her injuries.

61. The following day, Plaintiff was sent for a medical evaluation.

62. Plaintiff was diagnosed with a strain of her right shoulder and a lateral and medial epicondylitis of her right elbow.

63. After her medical evaluation, Plaintiff reported to work on February 21, 2020.

64. When Plaintiff arrived, she was brought into the office.

65. Plaintiff was told that she was being discharged from employment.

66. Plaintiff was told the reason for her termination was because of a safety protocol violation.

67. Plaintiff asked what protocols she had violated.

68. Plaintiff was told that was not "up for discussion."

69. Upon information and belief, neither Kristine nor any maintenance staff were discharged for February 20, 2020 incident.

70. All actions or inactions of or by Defendant occurred by or through its agents, servants, or employees, acting within the course and scope of their employment, as set forth herein.

71. Plaintiff made good-faith complaints about violations of safety protocols imposed by the Occupational Safety and Health Act 29 U.S.C. § 660 (c).

72. Plaintiff's complaints were not motivated by malice, spite, jealousy, or personal gain.

73. Defendant took adverse employment actions against Plaintiff, including but not limited to discharging her from employment.

74. Defendant's adverse employment actions taken against Plaintiff were based upon, and directly related to, Plaintiff's good-faith safety reporting, as stated above.

75. Defendant's adverse employment actions against plaintiff violate State public policy clearly declared by the Courts and the Legislature. *See Flenker v. Willamette Indus., Inc.*, 266 Kan. 198, 967 P.2d 295 (1998).

76. These laws pertain to the safety and general welfare of citizens of Kansas

and the United States.

77. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered irreparable injury, including past and future pecuniary losses, emotional pain, suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, reduced employment opportunities, and will continue to suffer the same unless and until this Court grants relief.

78. Defendant acted toward Plaintiff with willful conduct, wanton conduct, and/or malice.

79. Thus, an award of punitive and exemplary damages is appropriate.

WHEREFORE, Plaintiff prays for judgment against the above-named Defendant in an amount in excess of $75,000; for punitive damages; for the costs of this action; and for such other and further consideration and relief as the Court may deem just and equitable.

## DEMAND FOR JURY TRIAL

Plaintiff requests a trial by jury in the United States District Court for the District of Kansas to be held in Kansas City, Kansas, on all counts and allegations of wrongful conduct alleged in this Complaint.

Respectfully submitted,

 */s/ Daniel L. Doyle*
Daniel L. Doyle, KS Bar No. 11260
Robert A. Bruce, KS Bar No. 28332
DOYLE & ASSOCIATES LLC
748 Ann Avenue
Kansas City, Kansas  66101
Telephone:  (913) 371-1930
Facsimile:  (913) 371-0147
d.doyle@ddoylelaw.com
r.bruce@ddoylelaw.com
ATTORNEYS FOR PLAINTIFF